**TURKEY STATE BANK et al. v. ESTELLINE STATE BANK. (No. 655–4162.)**

(Commission of Appeals of Texas, Section A. May 27, 1925.)

**1. Banks and banking ⬅️15—Evidence held to show knowledge of insolvency of bank as matter of law before attempted change of deposit from interest-bearing to noninterest-bearing one.**

Evidence *held* to show as matter of law that creditor bank at time it attempted to change deposit from an interest-bearing to a noninterest-bearing one, had knowledge of fact that debtor bank was "insolvent," as such term is used when applied to banks.

**2. Banks and banking ⬅️15—Plaintiff bank held not to have become "depositor" entitled to payment of claim out of depositors' guaranty fund.**

In suit to establish claim against insolvent bank, payable out of depositors' guaranty fund, where original transaction between two banks was that of an interest-bearing loan, and changed to noninterest-bearing loan, but plaintiff bank never collected on such loan, *held* that plaintiff bank was not a depositor, and hence was not entitled to payment out of depositors' guaranty fund; a "depositor" being one who delivers to, or leaves with, bank money or commercial equivalent of money, subject to his order, and by virtue of which action title to money passes to bank.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Depositor.]

Error to Court of Civil Appeals of Seventh Supreme Judicial District.

Action by the Estelline State Bank against the Turkey State Bank and another. Judgment for plaintiff was affirmed by the Court of Civil Appeals (259 S. W. 679), and defendants bring error. Affirmed in part, and reversed and rendered in part.

W. A. Keeling, Atty. Gen., and Jno. W. Goodwin, Asst. Atty. Gen., for plaintiffs in error.

Fires & Williams, of Childress, for defendant in error.

CHAPMAN, J. Prior to December 21, 1920, the Turkey State Bank was operating a bank under the banking laws of Texas, and was protected by the state guaranty fund. J. H. Fry was its cashier and managing officer. At the same time the Estelline State Bank was engaged in the banking business at Estelline, Tex., with J. W. Moore its president and managing officer. In the trial of this case in the district court, certain facts were agreed to as follows:

On August 13, 1920, the Estelline State Bank loaned the Turkey State Bank $10,000, with interest at the rate of 7 per cent. per annum. On November 5, 1920, the Estelline State Bank notified the Turkey State Bank that it would want its money on the 13th day of November, 1920. On November 29, 1920, in reply to the demand of the Estelline State Bank for its money, the Turkey State Bank notified it that it was without funds with which to repay plaintiff the $10,000 borrowed, and requested 2 or 3 weeks' time, offering to increase the interest to 10 per cent. per annum, and on said date remitted interest on $10,000 at the rate of 10 per cent. per annum to December 1, 1920. The Estelline Bank accepted interest on the loan to December 1, 1920, at 7 per cent. It was agreed that the Turkey State Bank was insolvent on December 1, 1920, but it was not admitted that the Estelline State Bank knew of the insolvency on that date. On December 21, 1920, the state banking commissioner declared the Turkey State Bank insolvent and took possession thereof, and at that time it was indebted to the Estelline State Bank in the amount of the judgment in this case. The Estelline State Bank made necessary

proof to the banking commissioner of its claim, and sought to have it declared to be entitled to the benefit of the depositor's guaranty fund. The banking commissioner declined and rejected and refused payment of the claim out of the guaranty fund, but agreed to accept and approve same as that of a general creditor.

In addition to these agreed facts, the facts further show that the loan of the Estelline bank to the Turkey bank was carried on the books of the Turkey bank at all times as a deposit, and the reason for this is stated in a letter from the cashier of the Turkey bank to the president of the Estelline bank, of date August 12, 1920, which is as follows:

"The reason I suggest a deposit as the method of handling any funds you might care to let us use is that under the law we are only allowed to borrow $18,000, and we already have that much borrowed. Hence we are not allowed to give our note for any more, but we can pay interest on a deposit for its use."

In the letter from the Turkey bank to the Estelline bank of November 29, there is this statement:

"Now, Mr. Moore, when you were out here I felt sure enough of our resources would materialize to enable us to clean up with you by the first, but we have collected nothing, and have on hand barely enough funds to meet our absolutely necessary requirements."

Between the 1st and 10th of December, Mr. Moore of the Estelline bank was at the place of business of the Turkey State Bank and secured from Mr. Fry of the Turkey State Bank sufficient school warrants to reduce the loan to the amount of the judgment that was rendered in the case. Mr. Moore testified that at that time it was agreed between him and Fry that the money he had let Fry have should remain with him, the balance of it, as a noninterest-bearing deposit. Mr. Moore gave as his reason for this as follows:

"I had several reasons for changing that deposit from an interest-bearing to a noninterest-bearing deposit. One was that I wanted money, and I thought if I put that on a purely accommodation basis he would pay me back, and if I left it on an interest-bearing basis I would not feel at liberty to check on it when I felt like he could stand it."

This suit was brought by the Estelline bank against all necessary parties, for the amount of its claim, and to have its claim so classified by the state banking commissioner that the claim would participate in the depositors' guaranty fund. Judgment was in favor of plaintiff for the full amount claimed, and that the claim was entitled to the protection of the depositors' guaranty fund. The judgment was affirmed by the Court of Civil Appeals at Amarillo. 259 S. W. 679.

[1] The question now before this court is as to whether, under the facts above stated, the claim was entitled to the protection of the depositors' guaranty fund. The Court of Civil Appeals held that the Estelline bank was ignorant of the Turkey State Bank's insolvency, unless the failure of that bank to receive the deposit and the continued requests for time in which to pay same brought notice to the Estelline bank that the Turkey bank was insolvent. Under the meaning of the term "insolvency," as applied to institutions doing a banking business, we think that the Estelline bank, under the facts stated, as a matter of law, was apprised of the fact before the attempted change of deposit was made that the Turkey State Bank was insolvent. In the case of Commonwealth v. Tradesmen's Trust Co., 237 Pa. 316, 85 A. 363, by the Supreme Court of Pennsylvania, we find, as to the meaning of the term "insolvency" when applied to banks, defined as follows:

"It is not insolvency in its popular sense that the law regulating banks and trust companies and kindred corporations deals with, but insolvency in its legal sense, which exists whenever such an institution as this, from any cause, is unable to pay its debts in the ordinary or usual course of its business."

[2] It is clear that the Turkey bank could not meet its obligations. We deem it unnecessary to discuss this phase of the case any further, for the reason that, as we understand the facts and the law applicable thereto, the Estelline State Bank was never a general depositor with the Turkey State Bank. From the facts it clearly appears that the original transaction between the two banks was that of an interest-bearing loan. Then, if the Estelline bank never collected on the loan, it could not have made a deposit with the Turkey bank. The term "depositor," in its common acceptation is defined by the Supreme Court of Texas in Kidder v. Hall, 113 Tex. 49, 251 S. W. 497, as follows:

"A depositor is one who delivers to, or leaves with, a bank money or checks or drafts, the commercial equivalent of money, subject to his order, and by virtue of which action the title to the money passes to the bank."

And in the same case we find this statement:

"The law will look through all semblances and forms to ascertain the actual fact as to whether or not there has been a bona fide deposit made, and, if not, the guaranty fund does not protect the transaction, no matter how it may be evidenced. The guaranty fund does not guarantee the integrity of the evidences of a deposit, such as a certificate, but only the deposit itself."

Mr. Moore made the following statement:

"I had several reasons for changing that deposit from an interest-bearing to a noninterest-bearing deposit. One was that I wanted money, and I thought if I put that on a purely

accommodation basis he would pay me back, and if I left it on an interest-bearing basis I wouldn't feel at liberty to check on it when I felt like he could stand it."

This statement clearly shows that Mr. Moore did not collect on his loan, and that he was not a depositor as that term is above defined, and that there was never a bona fide deposit made by him. If he had collected on his loan, he would not then have wanted his money as stated by him, and it would not have been necessary for him to undertake to make arrangements by which he would get it.

We had the general issues in this case before us in the recent case of State Banking Board et al. v. L. P. Pilcher, 270 S. W. 1004, and refer to our holdings in that case for reasons why we have reached the conclusion in this case that the Estelline State Bank was not entitled to the benefit of the depositors' guaranty fund. ·

We recommend that the judgment of the district court and Court of Civil Appeals be reversed, and that judgment be rendered in favor of the plaintiff in error banking commissioner, in so far as the claim of defendant in error was classified as a noninterest-bearing deposit and as payable out of the depositors' guaranty fund, and that otherwise the judgment of the district court and Court of Civil Appeals be affirmed.

GREENWOOD and PIERSON, JJ. Judgments of the district court and Court of Civil Appeals reversed, and judgment entered denying defendant in error participation in the depositors' guaranty fund, as recommended by the Commission of Appeals.

CURETON, C. J., not sitting.