## CREWE TRACTOR AND EQUIPMENT CO., INC.

v.

## DEUTZ CORPORATION.

### Civ. A. No. 83-0530-R.

United States District Court, E.D. Virginia, Richmond Division.

Nov. 14, 1983.

John M. Boswell, Boswell & Williamson, Crewe, Va., for plaintiff.

William B. Cave, Christian, Barton, Epps, Brent & Chappell, Richmond, Va., for defendant.

## ORDER AND OPINION

WARRINER, District Judge.

Presently before the Court is defendant Deutz's ripe motion to dismiss or, in the alternative, to transfer this action to a district and division where it might have been brought as permitted by 28 U.S.C. § 1404(a). For the reasons set forth below it is hereby ORDERED that this cause of action be transferred to the United States District Court for the Northern District of Georgia, Atlanta Division.

Defendant Deutz Corporation, a distributor of agricultural equipment, is a corporation organized and existing under and by virtue of the laws of the State of Florida, with its principal place of business in Atlanta, Georgia.

On 14 May 1973 plaintiff Crewe and Deutz Corporation entered into an agreement entitled a "Franchise Dealer Contract," and on 31 May 1983 substituted a new "Dealer Agreement" for the previous contract. This second undertaking provides in pertinent part:

> All disputes or controversies which may arise between them out of or in connection with this Agreement, its construction, interpretation, effect, performance or non-performance or the consequences thereof, as well as out of, or in connection with any transaction between them contemplated herein, or the construction, interpretation, effect, performance or non-performance thereof or the consequences of any of the foregoing, shall be determined exclusively by the Courts of the State Georgia [sic] and the Federal Courts sitting in the State of Georgia.

On or about 2 August, 1983, plaintiff Crewe filed its Motion for Judgment in the Circuit Court of Nottoway County, Virginia, alleging (1) the failure of defendant to provide certain parts and accessories for agricultural equipment purchased by Crewe from Deutz; (2) the failure of Deutz to pay various volume bonuses allegedly due Crewe; and (3) the failure of Deutz to provide an adequate accounting to Crewe regarding the award of prizes under a sales promotional campaign designated the "Grand Slam Program." On 26 August 1983, within the time allowed under the rules of the Supreme Court of Virginia, Deutz filed its Special Appearance and Motion to Dismiss and Grounds of Defense in the office of the Clerk of the Circuit Court

of Nottoway County. On 29 August, 1983, Deutz filed its petition for removal, removal undertaking for cost and notice of removal in this Court. On 17 October 1983, defendant moved this Court either to dismiss the action for want of subject matter jurisdiction or, in the alternative, to transfer the action to the United States District Court for the Northern District of Georgia, Atlanta Division. Plaintiff countered with a motion to remand the action to the Circuit Court of Nottoway County, Virginia. In this procedural posture the matter has presented itself to this Court. At the heart of this litigation is the question of whether or not the forum selection clause in the contract signed by plaintiff and defendant should govern any action arising upon a breach of that contract.

The case most nearly on point is *Full-Sight Contact Lens Corp. v. Soft Lenses, Inc.*, 466 F.Supp. 71 (S.D.N.Y.1978), which involved a manufacturer of soft lenses and a distributor of soft lenses for the manufacturer. The distribution contract had a forum selection clause which required suit to be filed in the home county of the manufacturer in California. Plaintiff was a distributor in the Northeast, thus the agreed upon forum was inconvenient to plaintiff. The district court, at page 73, said:

> The United States Supreme Court has stated that the 'correct approach' is to enforce venue selection provisions unless the party seeking to avoid enforcement can 'clearly show that enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or overreaching.' *The Bremen v. Zapata Off-Shore Oil Co.*, 407 U.S. 1, 15 [92 S.Ct. 1907, 1916, 32 L.Ed.2d 513] ... (1972). Plaintiff in this action does not claim any contract invalidity. As to the first prong of the test— the question of reasonableness—the Supreme Court also declared that 'it should be incumbent on the party seeking to escape his contract to show that trial in the contractual forum would be so gravely difficult and inconvenient that he will for all practical purposes be deprived of

> his day in court.' *Id.* at 18 [92 S.Ct. at 1917]....

Applying this test, the Southern District of New York transferred the case to the Southern District of California.

The district court noted that the same result would have followed had it considered the motion only under 28 U.S.C. § 1404(a). The Court observed that by contract the parties had taken away the question of "convenience of parties" leaving the district court to consider only the convenience of witnesses and the interest of justice. Weighing these remaining factors the Court still concluded that the action should be transferred to California.

The Court of Appeals for the Fourth Circuit in *Mercury Coal & Coke, Inc. v. Mannesmann Pipe and Steel Corporation*, 696 F.2d 315, 317 (4th Cir.1982), appears strongly in favor of validating contractual choices of forum:

> Undoubtedly parties may agree in advance to submit controversies arising out of their contract to the jurisdiction of a given court. *National Equipment Rental, Ltd. v. Szukhent*, 375 U.S. 311, 315–16 [84 S.Ct. 411, 414–15, 11 L.Ed.2d 354] ... (1964); *Erlanger Mills, Inc. v. Cohoes Fibre Mills, Inc.*, 239 F.2d 502, 507 (4th Cir.1956). If the specification of a particular forum is reasonable, another court should not consider it an affront to its judicial power, but should respect the provision as the responsible expression of the parties' intent. *Furbee v. Vantage Press*, 464 F.2d 835, 836 (D.C.Cir. 1972); *Central Contracting Co. v. Maryland Casualty Co.*, 367 F.2d 341, 345 (3d Cir.1966).

The *Mercury* court indicated that the United States District Court for the Southern District of West Virginia, the trial court in that case, had applied West Virginia law to the issue of forum selection in an earlier decision on which it had relied, but it is not clear whether the appellate court concurred in such an approach. It is abundantly clear, however, that the appellate court, with particular reliance on *The Bremen*, considered primarily federal decisions

in reaching this result. Moreover, it is also clear from this decision that in the Fourth Circuit *The Bremen* applies alike to nonadmiralty cases as to admiralty cases,[1] and that the burden is upon the party resisting the contractual forum selection clause to show that "enforcement would effectively deprive that party of his day in court." *Id.* at 317. Plaintiff here has not even come close to making such a showing.

The Second Circuit, similarly, has found that *The Bremen* rule is fully as applicable to suits in a commercial setting as it is to admiralty and to international contracts. *Bense v. Interstate Battery System of America, Inc.,* 683 F.2d 718, 721 (2d Cir. 1982). Bense, like Crewe, was a franchised distributor of defendant's products. Having been terminated, Bense filed a complaint under the Sherman Act and the Clayton Act. The contract provided that any action arising from the agreement could be brought only in Dallas County, Texas. The Court of Appeals affirmed enforcement of the clause.

*Bense* raised the additional question of whether a federal court, in ruling on the validity of forum selection clauses, should apply federal venue law or that of the State whose substantive law was to govern the contract. Plaintiff maintained that the law of Texas, disfavoring forum selection clauses, should be applicable. Without discussing the choice of law on any abstract consideration, the Court of Appeals held that there should be no selection of a choice of law which "would render the forum selection clause meaningless, and would thus frustrate the purpose of the parties as it is clearly set forth in the agreement." *Id.* at 722.

To similar effect is *Richardson Engineering Co. v. International Business Machines,* 554 F.Supp. 467 (D.Vt.1981) which upheld a choice of forum clause on the basis of *The Bremen* rather than on State law.

*Dick Proctor Imports, Inc. v. Sumitomo,* 486 F.Supp. 815, 817–18 (E.D.Mo.1980) squarely confronted this question of whether the law of the forum State should apply or whether a federal law should be applied to the question of the enforceability of forum selection clauses in contracts. Judge Nangle concluded:

> Federal courts are bound to follow forum law with respect to matters of substance, *Erie Railroad Co. v. Tompkins,* 304 U.S. 64 [58 S.Ct. 817, 82 L.Ed. 1188] ... (1938); federal courts are not so bound as to other matters. The issue of whether the venue limitation in question is substantive has split the courts which have decided it so far. See *Taylor v. Titan Midwest Construction Corp.,* 474 F.Supp. 145 (N.D.Tex.1979), and cases cited therein. This Court must agree, however, with *Taylor....*
>
> In a sense, the validity of venue limitation provision is a matter of contract law. In a larger sense, however, this issue concerns the proper venue in the federal court system. Venue is clearly a matter of procedure, and, as such, governed by federal law. *Hanna v. Plumer,* 380 U.S. 460 [85 S.Ct. 1136, 14 L.Ed.2d 8] ... (1965). The provision does not alter existing rules of contract enforcement or interpretation, but, rather, alters the venue provisions as set out in the relevant statutes. The venue statutes of Missouri do not apply in this Court and the provision therefore alters only the federal statutory scheme as to venue. This attempted alteration of the federal venue provision should be governed by federal law. *Taylor,* supra.

Relying upon *The Bremen,* the district judge analyzed the factors to be considered and concluded that the matter should be transferred.

It is not clear what the Virginia law is on the subject. The annotations cited by plaintiff at 56 A.L.R.2d 320 traced down to the current supplement disclose no Virginia

---

**1.** More recently, *Mercury Coke & Coal* was cited with approval as applying *The Bremen* "in cases not involving international contracts or suits in Admiralty." *Dracos v. Hellenic Lines, Ltd.,* 705 F.2d 1392, 1394 n. 1 (4th Cir.1983).

decision on either side of the question. The case cited by plaintiff to show Virginia's choice, *Campbell v. Brotherhood of Locomotive Firemen & Engineers,* 165 Va. 8, 181 S.E. 444 (1935) will not support plaintiff's argument. Further, it antedates *The Bremen* and the tremendous surge in judicial recognition of the efficacy of contractual forum selection clauses following *The Bremen.* Whatever Virginia's policy may be, it cannot be characterized as a "strong" public policy.

■ As applied to the case at hand, the law places the burden upon plaintiff to show the Court why the Court should disregard the restriction to which the plaintiff agreed when it undertook to go into business with defendant. The Supreme Court in *The Bremen* at pages 15–17, 92 S.Ct. at 1916–1917 identified two factors the Court should consider in deciding whether to enforce a forum selection clause:

1) Was the provision entered into by parties of equal bargaining power, unaffected by fraud, overreaching, or any other form of unfairness?

2) Was the provision reasonable in that enforcement works no great inconvenience nor results in a transfer to a forum not reasonably related to the lawsuit?

■ Applying the first of these questions to the facts of the case before this Court, there is nothing to show that either party had overweening bargaining power over the other. In the absence of proof, I will nevertheless assume that defendant Deutz Corporation has considerably more financial resources than Crewe Tractor & Equipment Co., Inc. But relative financial resources do not always create an "overweening" bargaining position. It could well be that at the time the parties entered into their contractual relationship Deutz was trying desperately to crack into the American tractor market and was willing, through necessity, to make substantial concessions to prospective dealers in order to induce them to carry a new and untested line of tractors and equipment. The opposite could have been true. Deutz may have

been in a very firm position parceling out dealerships to the clamoring horde. There simply is no evidence one way or the other. The point to be made is simply that relative size cannot substitute for facts. And plaintiff has the burden to come forward with the facts showing it would be unreasonable to enforce the contract provision it agreed to.

With respect to the convenience of the parties and their witnesses, the only inconvenience shown me by the record is the inconvenience which undoubtedly could have been anticipated at the time the contract was signed. Atlanta, Georgia, is only an hour or so from here by air. Indeed, it is almost impossible to leave Richmond to go anywhere by air without having to go through Atlanta. If the forum selection clause was perceived to be inconvenient to plaintiff, the time to assert the objection was at the time when both parties were willing to do business with one another and both were, presumably, in a position to give and take in order to effect a bargain.

In carrying its burden, it is not suggested by plaintiff that "trial in the contractual forum will be so gravely difficult and inconvenient that [plaintiff] will for all practical purposes be deprived of [its] day in court." *The Bremen v. Zapata Off-Shore Co.,* 407 U.S. 1, 18, 92 S.Ct. 1907, 1917, 32 L.Ed.2d 513 (1972). The most that plaintiff claims is that it does not know any lawyers in Georgia. Nor may it be argued that the courts in Georgia are not reasonably related to this lawsuit, Atlanta being defendant's principal place of business.

■ There simply is no reason not to enforce the contractual provision. The action will be transferred to the United States District Court for the Northern District of Georgia, Atlanta Division.

An appropriate order shall issue.